IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION No.<br>)<br>) |
| v. | ) COMPLAINT<br>) |
| THE FINISH LINE, INC., | ) JURY TRIAL DEMAND<br>) |
| Defendant. | ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex, retaliation and constructive discharge, and to provide relief to Kayla Roberts and a class of female employees who were adversely affected by such practices. As alleged with greater particularity in paragraphs 8 – 10 below, the Commission alleges that The Finish Line, Inc. ("Defendant Employer") subjected Kayla Roberts and a class of female employees to sexual harassment. This resulted in the constructive discharge of at least two females. Further, Defendant Employer retaliated against female employees, by reducing the hours of those who resisted the sexual harassment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§§

2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Employer has continuously been an Indiana corporation doing business in the State of Tennessee and the city of Franklin, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h). Defendant Employer is a premium retailer of athletic shoes, apparel, and accessories, and operates 664 stores in malls across the United States.

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Kayla Roberts filed a charge with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

2

7. Since at least February 2009, Defendant Employer has engaged in unlawful employment practices at its Franklin, Tennessee, location in violation of Section 703 and 794 of Title VII, 42 U.S.C. § 2000e-2 and 3.

8. The unlawful employment practices involved subjecting Kayla Roberts to a sexually hostile work environment because of her sex, female.

    a. Defendant Employer hired Kayla Roberts as a cashier at its Cool Springs Galleria store in Franklin, Tennessee, on February 17, 2009.

    b. Ms. Roberts was 16 years old at the time.

    c. The General Manager, Gallien Fulton III, was 38 years old and an authority figure.

    d. Shortly after Ms. Roberts began work with Defendant Employer, Mr. Fulton began to touch Ms. Roberts inappropriately. The harassment was unwelcome.

    e. Fulton asked her on a date with him on at least ten occasions.

    f. Fulton took 16-year-old Ms. Roberts to his home and had sexual intercourse with her.

    g. Ms. Roberts, then a minor, could not consent to sexual intercourse with General Manager Fulton. Because she could not consent, the sexual assault was unwelcome.

    h. The sexual assault constitutes severe or pervasive harassment.

    i. Fulton rewarded Ms. Roberts with favorable work schedules.

    j. Co-workers knew of the inappropriate relationship and favorable scheduling described in subsections e, f, and i above, and complained to two Assistant Managers.

k. The two Assistant Managers knew of the inappropriate relationship and favorable scheduling, but failed to report it to Defendant Employer.

l. In October 2009, Ms. Roberts' parents learned of the inappropriate relationship between Ms. Roberts and General Manager Fulton, an authority figure.

m. On or about October 12, 2009, Ms. Roberts filed a criminal charge of aggravated statutory rape against Fulton. She also had an Order of Protection issued against him.

n. As a result of the sexual assault, Ms. Roberts did not return to work.

o. The unwelcome sexual conduct was sufficiently pervasive and severe to alter the terms and conditions of Ms. Roberts' employment and to create an abusive working environment.

p. Defendant Employer had a sexual harassment policy.

q. The policy was ineffective and did not protect Ms. Roberts.

r. The effect of the practices complained of in paragraph 8 a- q above, has been to deprive Ms. Roberts of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex, female.

9. The unlawful employment practices include the constructive discharge of Ms. Roberts and a class of females because of sexual harassment.

a. As delineated in paragraph 8 a – n above, Defendant Employer's General Manager Fulton subjected Ms. Roberts to sexual harassment up to and including sexual assault.

b. Ms. Roberts feared Mr. Fulton and could not return to work.

c.  Defendant Employer constructively discharged Ms. Roberts on October 12, 2009.

d.  As delineated in paragraph 10 a – g below, Defendant Employer's General Manager Fulton also subjected a class of female employees, at least one of whom were 18 or younger, to sexual harassment.

e.  Because of the humiliating treatment and the sexually abusive working environment, Defendant Employer constructively discharged the class of female employees.

f.  The effect of the practices complained of in paragraph 9 a- e above, has been to deprive a class of female employees of equal employment opportunities and to otherwise adversely affect their status as employees because of constructive discharge.

10. The unlawful employment practices involved subjecting a class of female employees to sexual harassment because of their sex.

a.  Between May 2008 and July 2009, General Manager Fulton sexually harassed a class of female subordinates.

b.  Two class members were 16 and 17 years old at the time of the sexual harassment.

c.  The sexual harassment by General Manager Fulton included but was not limited to his touching females' buttocks, rubbing females' stomachs and lower backs, unwelcome hugging, leering, and making unwelcome sexual remarks.

d.  In one instance, General Manager Fulton mimed stripping and pole dancing, using a hat to cover his genital area, in front of a 17-year-old cashier.

  e.  The sexual harassment directed at females as a class was sufficiently severe or pervasive to alter the terms and conditions of their employment and to create an abusive working environment.

  f.  Defendant Employer had a sexual harassment policy.

  g.  The policy was ineffective and did not protect the women.

  h.  The effect of the practices complained of in paragraph 10 a – g above, has been to deprive females as a class of equal employment opportunities and to otherwise adversely affect their status as employees because of their sex.

  11.  The unlawful employment practices included retaliation against Miranda Watson because of her resistance to the sexual harassment.

  a.  Ms. Watson worked as a cashier for Defendant Employer from March 3, 2009, to July 3, 2009.

  b.  General Manager Fulton made sexual advances to her, including touching her inappropriately when he talked to her and imitated a strip tease.

  c.  Ms. Watson resisted his touching, and advised him that his actions made her uncomfortable.

  d.  Ms. Watson observed General Manager Fulton awarding favorable shifts to young girls who responded positively to his actions.

  e.  Defendant Employer retaliated by reducing her work schedule, causing her to lose pay.

  f.  The effect of the practices complained of in paragraph 11 a – e above, has been to deprive Ms. Watson of equal employment opportunities and to otherwise adversely affect her status as an employee because of retaliation.

12. The unlawful employment practices complained of in paragraphs 8 through 11 above were intentional.

13. The unlawful employment practices complained of in paragraphs 8 through 11 above were done with malice and/or with reckless indifference to the federally protected rights of Kayla Roberts and a class of female employees, and Ms. Watson.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, attorneys, employees, and all persons in active concert or participation with it, from engaging in any employment practice that permits or condones sexual harassment or retaliation.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices described in paragraphs 8 through 11 above.

C. Order Defendant Employer to make whole Kayla Roberts and a class of female employees by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement.

D. Order Defendant Employer to make whole Kayla Roberts and a class of female employees found to have been sexually harassed by providing compensation for

past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 8 through 11 above, in amounts to be determined at trial.

E.  Order Defendant Employer to make whole Kayla Roberts and a class of female employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 8 through 11 above, including emotional distress, pain and suffering, embarrassment, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.  Order Defendant Employer to pay Kayla Roberts and a class of female employees punitive damages for its malicious and reckless conduct described in paragraphs 8 through 11 above, in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

8

Case 3:11-cv-00920   Document 1   Filed 09/29/11   Page 8 of 9 PageID #: 8

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

**P. DAVID LOPEZ**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

*/s/ Faye Williams (permission by SR)*
**FAYE WILLIAMS**
Regional Attorney
TN Bar No. 11730

*/s/ Joseph Crout (permission by SR)*
**JOSEPH CROUT**
Supervisory Trial Attorney
TN Bar No. 012957

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
1407 Union Ave., Suite 621
Memphis, TN 38104
(901) 544-0136

*/s/ Sally Ramsey*
**SALLY RAMSEY**
Senior Trial Attorney
TN Bar No. 18859

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
220 Athens Way, Suite 350
Nashville, TN 37228
(615) 736-2105