## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
      )
        Plaintiff, )           No. 3:11-cv-00920
      )           Chief Judge Haynes
v. )
      )
THE FINISH LINE, INC., )
      )
        Defendant. )
      )

## M E M O R A N D U M

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed this action under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") on

behalf of Claimants Kayla Roberts, Ashley Hopmayer, and Miranda Watson against Defendant,

The Finish Line, Inc. ("Finish Line"), claimants' former employer. Plaintiff asserts claims for

sexual harassment and retaliation. Plaintiff alleges, in essence, that claimants were sexually

harassed by Gallian Fulton, General Manager of Defendant's Franklin, Tennessee location.

Before the Court are Defendant's motion for summary judgment (Docket Entry No. 62)

and Plaintiff's motion for partial summary judgment (Docket Entry No. 72). In its motion,

Defendant contends, in sum: (1) that Plaintiff cannot establish a prima facie showing of sexual

harassment for each of the claimants; (2) that Plaintiff's proof fails to show any severe or

pervasive harassment; (3) that Defendant's prompt corrective action in response to Plaintiff's

complaints precludes relief; and (4) that Plaintiff's proof fails to show any claimant was

constructively discharged. In response, Plaintiff asserts that it has submitted sufficient evidence

1

in support of its claims of sexual harassment for each claimant.

In its cross motion, Plaintiff argues, in sum, that: (1) Defendant's claim that Plaintiff's claims are barred because all administrative remedies have not been properly exhausted is factually unsupported; (2) Defendant's defense that Plaintiff's claims are barred because they exceed the scope of or are inconsistent with the charge of discrimination filed with Plaintiff is factually unsupported; and (3) Defendant may not avail itself of the Ellerth defense.

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 62) should be granted in part as to Defendant's claims regarding Hopmayer, but Defendant's motion for summary judgment should be denied as to Defendant's claims regarding Roberts and Watson. Further, the Court concludes Plaintiff's motion for partial summary judgment (Docket Entry No. 72) should be granted in part as to Defendant's administrative-exhaustion affirmative defenses, but Plaintiff's motion for partial summary judgment should be denied as to its claims regarding Defendant's Ellerth affirmative defense.

## REVIEW OF THE RECORD[1]

Defendant is a retailer of sports apparel, accessories, and athletic footwear and operates stores nationally, including in Tennessee. (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶ 1). In October 2008, Defendant appointed Gallian

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Because material factual disputes exist, this section does not constitute a findings of fact under Fed. R. Civ. P. 56(d).

2

Fulton as General Manager of its Franklin, Tennessee store known as its Cool Springs Mall location. Id. at ¶ 5. As General Manager, Fulton was Defendant's most senior employee at its Cool Springs location. Id. at ¶ 6. Fulton hired and fired all store employees, set weekly work schedules, disciplined employees and supervised all store employees. Id. at ¶¶ 7-8. In October 2008, Defendant hired Crystal Freeman as an Assistant Manager for the Cool Springs location. Id. at ¶ 10. In January 2009, Defendant hired Samuel Bolling as an Assistant Manager for the same location. Id. at ¶ 9. Both Assistant Managers had a duty to report any allegations of sexual harassment or inappropriate conduct that violated Defendant's policies. Id. at ¶ 12.

Thirty-eight year-old General Manager Gallian Fulton hired minors Kayla Roberts, Ashley Hopmayer, and Miranda Watson between December 2008 and March 2009. Id. at ¶¶ 20, 52, 69. Within weeks of hiring then 16 year-old Roberts, Fulton began making unwelcome comments towards Roberts and initiating physical contact with her. Id. at ¶ 24. Fulton would rub Roberts' back and brush up against her buttocks with his hands and body. Id. at ¶ 25. Roberts found Fulton's touching of her unwelcome for approximately a month, and initially stated her opposition to Fulton's touching. Id. at ¶ 26. In April 2009, Roberts accepted an invitation to watch a movie at Fulton's home in Smyrna, Tennessee. Id. at ¶ 29. While at Fulton's home, Roberts voluntarily engaged in sexual intercourse with Fulton in Fulton's guest bedroom. Id. Roberts informed Fulton that she was not ready to have sex, but later agreed to engage in sexual intercourse with Fulton. Id. at ¶ 30. Fulton and Roberts began having sex on a weekly basis. Id. at ¶ 32. Roberts told Fulton that his sexual relationship with her was wrong, but she felt obligated to maintain her relationship out of fear of being transferred to another store location. Id. at ¶ 34. Despite feeling obligated to maintain her sexual relations with Fulton,

3

Roberts never reported their relationship to law enforcement or Defendant's sexual harassment hotline.

Fulton's six-month sexual relationship with Roberts continued until Roberts' parents learned about their relationship in October 2009. <u>Id.</u> at ¶ 42. Roberts never personally disclosed her relationship with Fulton to any person prior to her parents' discovery of her relationship. (Docket Entry No. 82, Plaintiff's Responses to State of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment, at ¶ 49). Roberts' parents immediately reported the matter to the Smyrna police, and Fulton was arrested and charged with statutory rape. (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶¶ 40-41). Roberts, still 16 years old, never returned to work at Defendant's store. <u>Id.</u> at ¶ 43. On October 13, 2009, Roberts filed a petition for an order of protection. (Docket Entry No. 82, Plaintiff's Responses to State of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment, at ¶ 64). Prior to Fulton's termination, Fulton remained General Manager for a period after Roberts obtained an order of protection. In August 2010, Fulton pled guilty to the statutory rape of Roberts. (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶ 41). Roberts later received two months of therapy after contemplating suicide. <u>Id.</u> at ¶ 48.

Assistant Managers Bolling and Freeman heard "rumors" at work that Roberts and Fulton were friends outside of work, and that they may have engaged in a romantic relationship. (Docket Entry. No. 66-10, Bolling Deposition, at 58; Docket Entry No. 74-2, Freeman Deposition, at 83, 87). Neither Bolling nor Freeman reported these rumors as a violation of Defendant's fraternization policy.

4

In March 2009, General Manager Fulton hired then 16 year-old Miranda Watson. (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶¶ 50-52). Plaintiff contends that Fulton began inappropriately touching Watson on her lower back, thighs, and shoulders. Id. at ¶ 54. In sum, Plaintiff contends: (1) without Watson's consent, Fulton gave Watson 8 or 9 massages and touched Watson's back, thighs and shoulders more than 30 times during her employment (Id. at ¶¶ 55-57); (2) Fulton engaged in a "striptease" in front of Watson in which Fulton put on a hat and made sexually provocative hip thrusts (Id. at ¶ 60); (3) Watson confronted Fulton and told him not to touch her again while removing his hand from her lower back about four or five weeks before her employment with Defendant ended (Id. at ¶ 61); (4) after Watson confronted Fulton about his touching her, Fulton immediately reduced her scheduled work hours (Id. at ¶ 62); (5) Watson complained to Bolling and Freeman that Fulton was cutting her hours, but neither Assistant Manager did anything in response (Id. at ¶ 63); and (6) Watson resigned in response to Fulton's inappropriate behavior and refusal to put her on the work schedule (Id. at ¶ 67). Defendant contends Fulton never engaged in any of the alleged behavior. Assistant Manager Bolling overheard Watson discussing the fact that Fulton attempted to hug her. (Docket Entry No. 82-9, Bolling Deposition, at 45). Upon hearing this, Bolling provided Watson with some of Finish Line's corporate phone numbers. Id. at 51. Bolling did not follow-up with Watson, nor did Bolling approach Fulton about the alleged behavior. Id. at 55.

In December 2008, General Manager Fulton hired then 17 year-old Ashley Hopmayer. (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶ 69). Plaintiff contends, in sum: (1) within weeks of her hire, Fulton began inappropriately

5

touching Hopmayer, including hugging her constantly (<u>Id.</u> at ¶ 70); (2) Fulton began poking and touching Hopmayer on her stomach almost every time she came to work (<u>Id.</u> at ¶ 71); (3) Fulton once hugged Hopmayer 10 times in a single shift; and (4) Hopmayer resigned her employment with Defendant because of Fulton's conduct and because Fulton made Hopmayer nervous about going to work (<u>Id.</u> at ¶ 75). Defendant contends Fulton never engaged in the alleged behavior.

## CONCLUSIONS OF LAW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>accord</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u>

6

Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of

7

material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

8

. . .

Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.</u> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

9

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshaling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshaling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed

10

verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Under Title VII, a "workplace [that] is permeated with 'discriminatory intimidation, ridicule,

11

and insult,' and that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" violates the Act.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). For a hostile environment claim under Title VII, the plaintiff must establish more than a "mere utterance of an . . . epithet which engenders offensive feelings in an employee," to be actionable.  Id.  As the Supreme Court further explained that:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Id. at 223.

Plaintiff must show that a reasonable person would consider the offensive conduct pervasive, and Plaintiff must subjectively experience the offensive conduct.  Harris, 510 U.S. at 21-22.  The harassing acts must be "either in concert or with a regularity that can reasonably be termed pervasive."  Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2nd Cir.1987).  Yet, the Sixth Circuit explained that sex-based comments need not be directed at a plaintiff to constitute conduct violating Title VII.  See Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir. 1997).

To establish a prima facie case of sexual harassment or a sexually hostile work environment under Title VII, the plaintiff must prove: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment created a hostile work environment; and (5) that the employer failed to take reasonable care to prevent or correct any sexually harassing behavior.

12

See Bowman v. Shawnee State Univ., 220 F.3d 456, 462-63 (6th Cir. 2000) (affirming summary judgment despite proof of "a litany of perceived slights and abuses" including sexually offensive language). To be actionable, sexual harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment. Id. The Court is also required to consider if the plaintiff engaged in similar conduct. Id.

Defendant contends Plaintiff cannot establish a prima facie claim of sexual harassment as to Roberts because, in sum: (1) Roberts was not subjected to unwelcome sexual harassment; (2) the harassment did not create a hostile work environment; (3) Defendant has established an Ellerth defense; and (4) Roberts was not constructively discharged.

"The gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome" and "the correct inquiry is whether respondent by her conduct indicated that the alleged sexual advances were unwelcome." Meritor Savings Bank v. Vinson, 477 U.S. 57, 68 (1986). Moreover, to be an unlawful hostile environment, harassment must be sufficiently severe or pervasive to alter a term, condition, or privilege of the claimant's employment. Harris, 510 U.S. at 21. Courts look at the totality of circumstances to determine whether a work environment is "hostile" or "abusive". Hawkins v. Anheuser-Busch, Inc. 517 F.3d 321, 333 (6th 2008). Factors to consider include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance. Even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation. Id. "[A]cts of touching and unwelcome physical contact . . . establish an element of physical invasion" and "harassment involving an 'element of physical invasion' is more severe than comments alone." Hawkins, 517

13

F.3d at 333-35.

Defendant contends that because Roberts engaged in consensual sex with Fulton, and because Roberts maintained a six-month long romantic relationship with Fulton, her conduct proves the alleged sexual advances were welcome. In response, Plaintiff contends Roberts' consent to the sexual harassment is not dispositive on the question of whether Fulton's sexual conduct was welcome. In essence, Plaintiff asserts Fulton's inappropriate touching and comments were rebuffed by Roberts for almost a month after her initial hiring. Moreover, after beginning their consensual sexual relationship, Roberts told Fulton that their sexual relationship "was wrong," yet she felt obligated to continue their relationship for fear of being transferred to a different location.

Defendant next asserts the welcomeness inquiry should be either irrelevant or presumptively satisfied in actions involving minors. The Sixth Circuit has not addressed the issue of welcomeness and minors directly, yet the Seventh Circuit held that "rather than deciding whether a particular Title VII minor plaintiff was capable of 'welcoming' the sexual advances of an older man, [federal courts] should defer to the judgment of average maturity in sexual matters that is reflected in the age of consent in the state in which the plaintiff is employed. That age of consent should thus be the rule of decision in Title VII cases." Doe v. Oberweis Dairy, 456 F.3d 704, 713 (7th Cir. 2006). Plaintiff contends that applying Oberweis Dairy and relevant Tennessee law, the then 16 year-old Roberts could not "consent" to sex with the 38 year-old Fulton. Plaintiff asserts because under Tennessee law,

> [a]ggravated statutory rape is the unlawful sexual penetration of a victim by the defendant, or the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least (10) years

14

older than the victim,

Roberts could not lawfully consent. Tenn. Code Ann. § 39-13-506(c) .

In response, Defendant contends relevant Tennessee law establishes a 16 year-old can consent to sex in the civil context because there is no definitive statutory age of consent in Tennessee. In Doe v. Mama Taori's Premium Pizza, LLC, 2001 WL 327906 (Tenn. Ct. App. 2001), the Tennessee Court of Appeals held "[b]oth the Tennessee Supreme Court and the Tennessee General Assembly have declined to adopt a per se rule that in civil actions all persons under the age of eighteen lack the capacity to consent." Id. at *5.

> Based on its recognition that children mature at different rates, the court declined to adopt a per se rule regarding the competency or capacity of minors. Instead, the court determined that a minor's competency or capacity depends on his or her **age, ability, experience, education, training, degree of maturity or judgment, as well as upon the minor's conduct and demeanor at the time of the incident**. The court also dictated that the traditional "Rule of Sevens" should be used as the yardstick for determining whether a minor is sufficiently competent to give consent. The rule, as currently formulated by the court, is:
>
> under the age of seven, no capacity; between seven and fourteen, a rebuttable presumption of no capacity; **between fourteen and twenty-one, a rebuttable presumption of capacity.** Of course, the Rule of Sevens has been modified by the General Assembly's enactment of the Legal Responsibility Act of 1971 which lowered Tennessee's age of majority from twenty-one to eighteen years of age. Thus, for present purposes, persons over the age of eighteen, being adults, are fully capable of giving consent. **For persons between the ages of fourteen and eighteen, there is a rebuttable presumption that they are capable of giving consent.**

Id. (emphasis added) (citations omitted).

Plaintiff relies on a criminal statute to establish an age of consent, but under Mama Taori, because Roberts was 16 years old at the time she engaged in sexual conduct with Fulton, there is a rebuttable presumption in favor of her being capable of consenting to sex with Fulton in this civil action. Yet, the Seventh Circuit has also held that in actions such

15

as this, "**the primary concern is that the older male will use deceptive or manipulative methods to overcome the immature female's reluctance to engage in sex.**" United States v. Thomas, 159 F.3d 296, 299 (7th Cir. 1998) (emphasis added). Here, the sexual conduct occurred in an employment setting. Fulton was Roberts' supervisor, and was 22 years older than Roberts. Under these facts, the Court concludes that the presumption in favor of Roberts' ability to consent is clearly rebutted. Thus, there is sufficient evidence to raise a genuine issue of material fact as to whether the harassment was welcome.

Defendant next contends Plaintiff's claim fails because Roberts admits that Fulton's sexual harassment did not impact her ability to perform her job. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An actionable hostile environment can only be found to exist when "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victims's employment and create an abusive working environment." Farmer v. Cleveland Public Power, 295 F.3d 593, 605 (6th Cir. 2002).

Defendant asserts that Roberts was able to complete her job duties in a satisfactory manner, as evidenced by her deposition testimony.

> **Q:** And so you were still working this whole time; is that right?
> **A:** Correct
> **Q:** And you were still doing all your job duties just fine?
> **A:** Yes
> **Q:** And liked your schedule still?

**A:** Yeah

(Docket Entry No. 65-3, Roberts Deposition, at 52). In response, Plaintiff contends the age

disparity between Fulton and Roberts, coupled with Fulton's position of authority over

Roberts, supports Plaintiff's position that Fulton's harassment and sexual relationship created

a hostile, offensive or intimidating work environment and Roberts perceived it as such.

Roberts, in her deposition testimony, admitted that she feared being transferred to a new

Finish Line location or lose her job if she discontinued sexual relations with Fulton.

> **A:** I didn't consider him a boyfriend at the time, no.
> **Q:** Why is that?
> **A:** Because a boyfriend/girlfriend relationship should be wanted by both parties.
> I still felt obligated so –
> **Q:** Why did you feel obligated?
> **A:** Because I felt like if I didn't, he probably would have transferred me to a
> different store. I didn't like the RiverGate store. I just didn't want to lose my
> job.

(Roberts Depo 53-54). Thus, the Court concludes the discriminatory intimidation Roberts

felt was sufficiently severe or pervasive enough to alter the conditions of her employment,

and subsequently created an abusive working environment. As such, there is sufficient

evidence to raise a genuine issue of material fact as to whether the harassment created an

unlawfully hostile work environment.

Defendant next contends the affirmative defense under <u>Burlington Industries, Inc. V.</u>

<u>Ellerth</u>, 118 S.Ct. 2257 (1998), applies. In <u>Ellerth</u>, the Supreme Court held:

> An employer is subject to vicarious liability to a victimized employee for an
> actionable hostile environment **created by a supervisor** with immediate (or
> successively higher) authority over the employee. When no tangible employment
> action is taken, a defending employer may raise an affirmative defense to liability
> or damages, subject to proof by a preponderance of the evidence, <u>see</u> Fed. Rule
> Civ. Proc. 8(c). **The defense comprises two necessary elements: (a) that the**

**employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, <u>and</u> (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.**

<u>Id.</u> at 2262 (emphasis added).

Here, Defendant asserts it satisfies <u>Ellerth</u>'s requirements because Defendant exercised reasonable care to prevent and correct sexually harassing behavior, and Roberts did not report any alleged harassment to Defendant. Defendant asserts its harassment policy, which Roberts acknowledged receiving, prohibits harassment and provides multiple ways to report harassment. Under Defendant's harassment-reporting procedures, Roberts was not required to report the alleged harassment to Fulton, as she could have reported it to her district manager, the Human Resources Department, or used the hotline phone number provided to her. Thus, Defendant contends there is no suggesting Defendant's harassment policies and procedures were inadequate.

Plaintiff responds contending Defendant's harassment policy was ineffective in practice in reasonably preventing and correcting sexually harassing behavior. "[O]nce the employer has knowledge of the harassment, the law imposes upon the employer a duty to take reasonable steps to eliminate it." <u>Clark v. United Parcel Service, Inc.</u>, 400 F.3d 341, 349 (6th Cir. 2005). The first element of the <u>Ellerth</u> defense "requires an inquiry that looks behind the face of a policy to determine whether the policy was effective in practice in reasonably preventing and correcting any harassing behavior." <u>Id.</u> "The effectiveness of an employer's sexual harassment policy depends upon the effectiveness of those who are designed to implement it." <u>Id.</u> at 350.

Plaintiff contends that Defendant, through its assistant managers Bolling and

18

Freeman, was on notice of the sexual harassment, but failed to take prompt corrective or remedial action. Plaintiff asserts Defendant's sexual harassment policy imposed a duty on assistant managers Bolling and Freeman to report any complaints they received, as well as a responsibility to independently report incidents of possible sexual harassment of which they were aware. Plaintiff alleges assistant manager Bolling admitted that during his employment he was informed that Fulton had tried to touch, hug, or kiss female employees, in violation of Defendant's sexual harassment policy. Plaintiff further alleges Bolling heard rumors of a romantic relationship between Fulton and Roberts around May or June 2009. Further, Bolling allegedly discussed the rumors with assistant manager Freeman. Bolling and Freeman discussed Roberts' favorable work scheduling, noting "people said that there was something going on or there would have to be something going on with [Roberts] getting the schedule–the hours schedule." (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶ 116). Plaintiff asserts under Defendant's sexual harassment policy Bolling and Freeman's alleged knowledge is imputed to Defendant. Thus, Plaintiff contends Defendant was on notice and failed to take requisite steps to address the harassment.

In response, Defendant contends that Freeman and Bolling had no actual knowledge of any sexual relationship between Fulton and Roberts. Defendant contends the information reaching Fulton and Roberts only constituted rumors. Moreover, Defendant contends that Bolling and Freeman were not "supervisors" under Title VII who could impute liability to Defendant. Under Title VII, a "supervisor" is a person with immediate or successively higher authority over employee who exercises significant

19

control to hire, fire, demote, promote, transfer, or discipline an employee. <u>Hall v. Bodine</u> <u>Elec. Co.</u>, 276 F.3d 345, 355 (7th Cir. 2002). In essence, Defendant contends that because Bolling and Freeman did not have authority to hire, fire, demote, promote, transfer, or discipline an employee, they necessarily could not impute liability to Defendant under Title VII. Yet, it is undisputed that all of Defendant's employees have an obligation to report any violations of Defendant's sexual harassment policy if they observe such violations by an employee. (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶ 118). When an employee designates certain employees as implementors of its policy, and one of those employees becomes aware of misconduct, the employer "has itself answered the question of when it would be deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures." <u>Clark</u>, 400 F.3d at 350. Thus, assistant managers Bolling and Freeman's supervisor classification under Title VII is nondispositive on this claim.

With regard to supervisors in the workplace, "it is no longer enough for an employer to take corrective action; employers now have an affirmative duty to prevent sexual harassment by supervisors." <u>Williams v. Gen. Motors Corp.</u>, 187 F.3d 553, 561 (6th Cir. 1999). The widespread "rumors" assistant managers Bolling and Freeman heard triggered their affirmative duty to take steps to prevent any harassment. The Court concludes there is sufficient evidence to raise a genuine issue of material fact as to whether the assistant managers had knowledge of unwelcome sexual harassment. The Court also concludes that these managers had an affirmative duty to inform Defendant of

20

any alleged romantic relationship between Roberts, a minor, and Fulton about which they may have known.

Defendant next asserts it may avail itself of the Ellerth defense because under the second prong of Ellerth, Roberts did not report any alleged harassment, unreasonably failing to take advantage of any preventive or corrective opportunities provided by Defendant. As to the reporting, the Court concludes that Roberts' status as a juvenile is a fact that could lead the finder of fact to conclude that Roberts' failure to report was excusable in this factual context. Moreover, Defendant may not avail itself of Ellerth's protection, as it failed the first prong of Ellerth's two-part conjunctive test.

As to Plaintiff's constructive discharge claim, Plaintiff must establish: (1) that Defendant deliberately created intolerable conditions, as perceived by a reasonable person; and (2) with the intention of forcing the claimants to quit and that claimants actually quit. Moore v. Kuka Welding Sys., 171 F.3d 1073, 1080 (6th Cir. 1999). To determine if there is a constructive discharge, both the employer's intent and the employee's objective feeling must be examined. Id. (citing Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)). "A constructive discharge occurs only when an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign." Agnew v. BASF Corp., 286 F.3d 307, 309 (6th Cir. 2002). Courts gauge whether an employer has constructively discharged an employee "by determining whether the employee's working conditions were intolerable, by objective standards." Id.

Defendant contends Roberts failed to exhaust her administrative remedies

21

regarding her claim that she was constructively discharge, as required under Title VII.

"Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the

claimant explicitly files the claim in an EEOC charge or the claim can reasonably be

expected to grow out of the EEOC charge." Abeita v. TransAmerica Mailings, Inc., 159

F.3d 246, 254 (6th Cir. 1998). In response, Plaintiff contends Roberts' constructive

discharge claim arose out of Plaintiff's investigation of her sexual harassment claim.

Where facts revealed with respect to the charged claim would prompt the EEOC to

investigate a different, uncharged claim, the plaintiff is not precluded from bringing that

claim. See Wigel v. Baptist Hosp. Of East Tennessee, 302 F.3d 367, 380 (6th Cir. 2002).

Here, Plaintiff investigated and found cause for constructive discharge on Roberts'

behalf. Roberts' claim of constructive discharge arose after she filed her sexual

harassment claim, and grew out of, her original charge. Abeita, 159 F.3d at 254. With

the collective proof cited above, the Court concludes Plaintiff's constructive discharge

claim is not procedurally barred. The Court further concludes there is sufficient evidence

to raise a genuine issue of material fact as to whether Roberts was constructively

discharged.

As to Plaintiff's sexual harassment claim on behalf of Hopmayer, Defendant

contends Fulton's conduct toward Hopmayer was not severe or pervasive. As previously

noted, for sexual harassment to be actionable under Title VII, "the conduct in question

[must be] severe or pervasive enough to create an environment that a reasonable person

would find hostile or abusive, and that the victim subjectively regarded it as abusive."

Smith v. Leggett Wire Co., 220 F.3d 752, 760 (6th Cir. 2000). In determining whether

22

the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment under the Title VII, it is well-established that the Court must consider the totality of circumstances. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993) ("whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances"). The United State Supreme Court has noted,

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998). The totality of circumstances test must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effects of such incidents may result in a Title VII violation. This totality of circumstances examination should be viewed as the most basic tenet of the hostile work environment cause of action. Williams, 187 F.3d at 563. Here, Fulton's conduct toward Hopmayer was clearly offensive. This conduct may not be objectively severe or pervasive enough to create an actionable claim under Title VII for an adult female. See, e.g., Clark v. United Parcel Service, Inc., 400 F.3d 341 (6th Cir. 2005) (holding that a hostile work environment was not shown where a male supervisor, over the course of two-and-a-half year, told sexual jokes to the female plaintiff, twice placed his vibrating pager against plaintiff's upper thigh and asked if it felt good, and once grabbed the back of plaintiff's overalls and tried to look down them.). Yet, given Fulton's conduct toward the juveniles

Roberts and Watson, and Hopmayer's status as a juvenile for a period of her employment, the Court concludes that a jury could find Fulton's conduct sufficiently severe. Thus, the Court concludes Defendant's motion for summary judgment should be denied on this claim.

Defendant next contends Hopmayer's harassment claim is barred under <u>Ellerth</u>. An affirmative defense to harassment is available to an employer under <u>Ellerth</u> if: (1) the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior; **and** (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer **or to avoid harm otherwise**. <u>Ellerth</u>, 524 U.S. 742 (emphasis added). Defendant contends it may avail itself of the <u>Ellerth</u> defense because Defendant's sexual harassment policy was effective, and Hopmayer failed to report any alleged harassment to Defendant. In response, Plaintiff asserts Hopmayer took affirmative steps to avoid Fulton's harmful conduct by protesting directly to Fulton telling him to stop poking her in response to his poking her in the stomach. Thus, Hopmayer The Court concludes Hopmayer's direct insistence that Fulton not touch her provides sufficient evidence to raise a genuine issue of material fact as to whether Hopmayer took sufficient steps to avoid harm in the workplace.

Defendant further contends Hopmayer's constructive discharge claim fails as there is no evidence that Hopmayer's working conditions were intolerable. As discussed earlier, "[a] constructive discharge occurs only when an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign." <u>Agnew v. BASF Corp.</u>, 286 F.3d 307, 309 (6th Cir. 2002). Courts gauge

24

whether an employer has constructively discharged an employee "by determining whether the employee's working conditions were intolerable, by objective standards." Id. Hopmayer undisputably found Fulton's conduct offensive, and under an objective standard the Court concludes that the 38 year-old Fulton's sexual harassment of the teenage Hopmayer created an intolerable working condition. Thus, there is sufficient evidence to raise a genuine issue of material fact as to whether Hopmayer was constructively discharged.

Defendant next contends Plaintiff has not established a prima facie case of sexual harassment for claimant Watson. Defendant contends, in sum: (1) Fulton's alleged sexual harassment of Watson was not severe or pervasive; (2) Watson's claims are barred under Ellerth; (3) Watson was not constructively discharged; and (4) Watson's retaliation claim fails.

First, Defendant contends that while Fulton's alleged conduct toward Watson was inappropriate and would have violated company policy, it is not severe and pervasive under Title VII. In response, Plaintiff contends Fulton's thirty or more physically invasive touches of the 16 year-old Watson's back, thigh, and shoulders subjected Watson to severe or pervasive sexual harassment. Under the standards discussed earlier, the Court concludes that under the totality of circumstances examination there is sufficient evidence to raise a genuine issue of material fact as to whether the Fulton's alleged conduct toward Watson was severe and pervasive.

Second, Defendant contends Watson's harassment claim is barred under Ellerth. An affirmative defense to harassment is available to an employer under Ellerth if: (1) the

25

employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer tor to avoid harm otherwise. Ellerth, 524 U.S. 742. Defendant contends it may avail itself of the Ellerth defense because Defendant's sexual harassment policy was effective, and Watson failed to report any alleged harassment to Defendant.

As with Roberts, Plaintiff contends knowledge of Fulton's alleged harassment of Watson was imputed to Defendant through assistant manager Bolling. Plaintiff asserts Bolling had knowledge of Fulton's offensive conduct when he overheard Watson telling another employee that Fulton had tried to hug her. After overhearing that conversation, Bolling provided Watson with a corporate number. Moreover, the Court "may consider evidence of other acts of harassment of which a plaintiff becomes aware during the period his or her employment, even if the other acts were directed at others and occurred outside of the plaintiff's presence." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 335 (6th Cir. 2008). Here, Watson, and the majority of sales associates at the store, complained to assistant manager Bolling that "there was something going on [between Roberts and Fulton] or there would have to be something going on with [Kayla Roberts] getting the schedule – the hours scheduled." (Docket Entry No. 80, Defendant's Responses to Plaintiff's Statement of Undisputed Facts, at ¶ 1). Watson was aware that other female employees were likely being exposed sexually inappropriate and harassing behavior. Thus, Plaintiff contends Defendant was on notice and failed to take requisite steps to fully address Fulton's harassment of Watson. As with Roberts and Hopmayer, the Court

26

concludes there is sufficient evidence to raise a genuine issue of material fact as to whether assistant manager Bolling had knowledge of unwelcome sexual harassment, and whether he had an affirmative duty to inform Defendant of any alleged harassment. The Court also concludes that Defendant's assistant managers had an affirmative duty to inform Defendant of any alleged sexually harassing conduct Fulton was exhibiting toward Watson. Thus, Defendant may not avail itself of the Ellerth defense.

Third, Defendant contends Watson's constructive discharge claim fails as there is no evidence that Watson's working conditions were intolerable. As discussed earlier, "[a] constructive discharge occurs only when an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign." Agnew v. BASF Corp., 286 F.3d 307, 309 (6th Cir. 2002). Courts gauge whether an employer has constructively discharged an employee "by determining whether the employee's working conditions were intolerable, by objective standards." Id. Watson undisputably found Fulton's conduct offensive, and under an objective standard the Court concludes that the 38 year-old Fulton's sexual harassment of the 16 year-old Watson created an intolerable working condition. Thus, there is sufficient evidence to raise a genuine issue of material fact as to whether Watson was constructively discharged.

Defendant next contends Hopmayer and Watson's claims are time-barred. Defendant asserts that Hopmayer and Watson's claims are untimely because Defendant did not receive notice of their claims with 300 days of Watson and Hopmayer's respective resignations. In response, Plaintiff contends EEOC v. Keco, 748 F.2d 1097 (6th Cir. 1984) is dispositive of this issue. In Keco, a woman filed a charge alleging pay

27

discrimination and the EEOC investigation expanded to encompass both pay and hiring discrimination. Id. at 1098. The EEOC later found cause to believe the employer in Keco was discriminating against women as a class, and subsequently filed suit alleging discrimination against women as a class, without identifying each woman. The Sixth Circuit in Keco held that the EEOC's general reference to class claims during conciliation was adequate, as "the class-based claim is basically the same as [the charging party's] claim; only the number of [claimants] has changed." Id.

Here, as required under 42 U.S.C. § 2000e-5(f)(1), Roberts timely filed her charge of discrimination, which triggered an investigation and gave Defendant notice of its potential class liability. As such, Watson and Hopmayer can attach their claims to Roberts charge and are under no duty to file their own individual charges. Thus, the Court concludes that under the single filing rule, Watson and Hopmayer were not required to file a charge to recover, and their claims are not time-barred.

Defendant next contends dismissal of all claims is appropriate because Plaintiff failed to conciliate in good faith prior to filing suit. Title VII requires the EEOC to conciliate with an employer in good faith as a precondition to initiating litigation. 42 U.S.C. § 2000e-5(b). "A good-faith attempt at conciliation requires that the EEOC: (1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." EEOC v. Argo Distribution, LLC, 555 F.3d 462, 468 (5th Cir. 2009). In essence, Defendant contends Plaintiff's conciliation efforts fatally flawed because Plaintiff did not convey Defendant's offer of

28

settlement to the claimants before rejecting the settlement offer.

In response, Plaintiff asserts "the KECO Industries court clearly admonished district courts to avoid qualitative evaluation of the EEOC's conciliation efforts; the court stated that 'the district court should only determine whether the EEOC made an attempt at conciliation.'" EEOC v. Mike Fink Corp., No. 3:96-0790, 1998 WL 34078445, at *3 n.4 (M.D. Tenn. July 17, 1998). Here, Roberts filed a timely charge of discrimination. (Docket Entry No. 83). Plaintiff issued a cause determination on September 30, 2010. Plaintiff next issued a Notice of Intent to Reconsider Determination and reopened its investigation. Plaintiff issued a Second Letter of Determination and proposed Conciliation Agreement on July 6, 2011. Defendant rejected Plaintiff's demands and countered with an offer Plaintiff rejected. Plaintiff next informed Defendant conciliation efforts had failed, and initiated this action soon thereafter. Thus, the Court concludes Plaintiff did engage in conciliation and refrains from making a qualitative assessment of Plaintiff's conciliation efforts, and Defendant's claim on this issue fails.

Accordingly, for these reasons, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 62) should be denied. Further, the Court concludes Plaintiff's motion for partial summary judgment (Docket Entry No. 72) should be granted in part as to Defendant's administrative-exhaustion affirmative defenses, but Plaintiff's motion should be denied as to its claims concerning Defendant's Ellerth affirmative defense.

An appropriate Order is filed herewith.

**ENTERED** this _10_ day of January, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court.

29