UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff | )<br>) |
| v. | ) No. 3:11-cv-00920<br>) Chief Judge Haynes |
| THE FINISH LINE, INC., | )<br>)<br>) |
| Defendant. | ) |

# MEMORANDUM

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. on behalf of Claimants Kayla Roberts, Ashley Hopmayer, and Miranda Watson against Defendant, The Finish Line, Inc. ("Finish Line"), claimants' former employer. Plaintiff's claims are that claimants were sexually harassed by Gallian Fulton, the Defendant's general manager of its Franklin, Tennessee store. After discovery, the parties filed motions for summary judgment. The Court denied the Defendant's motion for summary judgment, but granted in part Plaintiff's motion for summary judgment as to Defendant's affirmative defenses on exhaustion of administrative remedies. (Docket Entry No. 122).

Plaintiff's claims proceeded to a jury trial, and on January 31, 2013, the jury returned a verdict in favor of Plaintiff's claims on behalf of Roberts, Hopmayer, and Watson. (Docket Entry No. 146). The jury found that Defendant's general manager, Gallian Fulton, subjected Roberts, Hopmayer, and Watson to a hostile work environment in violation of Title VII. Id. The jury also

1

found that Defendant retaliated against and constructively discharged Watson in violation of Title VII. Id. The jury awarded $10,000 in compensatory damages each to Roberts, Hopmayer, and Watson. The jury did not find that Defendant, based upon the conduct of Fulton, its general manager, acted with "malice or reckless indifference" to the federally protected rights of Roberts, Hopmayer, or Watson, and did not award any punitive damages.

Before the Court are Plaintiff's renewed motion for judgment as a matter of law for claimant Kayla Roberts's constructive discharge claim or in the alternative, a new trial (Docket Entry No. 149) and Plaintiff's motion for a new trial on damages (Docket Entry No. 154) to which the Defendant has responded. In sum, the EEOC seeks judgment, as a matter of law, on claimant Kayla Roberts's constructive discharge claim or in the alternative, a new trial for Roberts on that claim and damages..

### A. Motion for Judgment as a Matter of Law

At the close of its proof and all proof, Plaintiff moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) on Plaintiff's constructive discharge claim for Roberts. Plaintiff's renewed motion asserts that the trial testimony established its entitlement to judgment as a matter of law on Roberts's constructive discharge claim. Alternatively, Plaintiff contends the jury's failure to find in Plaintiff's favor on Roberts's constructive discharge claim is against the weight of evidence. In response, Defendant contends, in sum: (1) that Plaintiff did not present facts at trial proving the intent necessary to succeed on Roberts's constructive discharge claim and (2) that Roberts did not find her work environment "intolerable."

As to Kayla Roberts, Plaintiff presented evidence at trial that Defendant's 38 year old general manager, Gallian Fulton, entered into a several-month-long sexual relationship with the then-16 year

2

Case 3:11-cv-00920 Document 188 Filed 04/19/13 Page 2 of 12 PageID #: 3335

old Roberts. (Docket Entry No. 155, Plaintiff's Motion for New Trial on Damages, at 4). Fulton and Roberts engaged in oral and vaginal sexual intercourse for roughly six (6) months, during which time Fulton had vaginal sexual intercourse and/or oral sex with Roberts at Defendant's Franklin, Tennessee location after work, in Fulton's automobile, in area hotels and at Fulton's home. Id. at 4-5. In addition, Roberts testified that she contracted a sexually transmitted disease – HPV – from her sexual relationship with Fulton. Id. at 5. Subsequent to quitting her job at Defendant's Franklin, Tennessee store, Roberts's parents forcibly hospitalized her for depression. Id. During that period, Roberts admitted to experiencing suicidal thoughts. Id. Fulton's sexual harassment of Watson and Hopmayer consisted of inappropriate hugging, touching of shoulders, legs, and back over clothing. Fulton's harassment inflicted upon Roberts rises to a significantly more egregious level of conduct. See id. 5-7. The jury found in Plaintiff's favor for Watson's constructive discharge claim, but did not find in Plaintiff's favor on Roberts's or Hopmayer's constructive discharge claim.

As to her trial testimony on why she left the Defendant's employment, Roberts's testimony , in pertinent part, is set forth below:

Q. After you went to the police station, Ms. Roberts, did you ever return to work at Finish Line?

A. No, I did not.

Q. Did you want to quit work at that time?

A. Not before, no.

Q. Okay. And why did you quit at that time?

A. I did not want to go back and put myself in that same position to where things would start happening again.

> Q. And after you quit at Finish Line, did you immediately get another job?
>
> A. No, I did not.
>
> Q. And why not?
>
> A. I did not feel like I was mentally or physically capable to work at that point.

(Docket Entry No. 175, Robert's Trial Testimony, at 32-33).

Defendant contends Plaintiff failed to present any evidence of Defendant's intent to force Roberts to quit. Defendant also contends that, viewing the facts, in a light most favorable to the non-movant, Fulton's intent was to have Roberts remain employed at Finish Line. Defendant cites a November 13, 2009 message Roberts wrote Fulton stating, "I'm soo sorry about work. I'm not sure what's going on, all I know is that you were suspended with pay? Baby, I don't want you to lose your job. I know how much you love your job. I LOVED that job." (Docket Entry No. 169, Defendant's at 6).

For a motion for judgment as a matter of law under Fed. R. Civ. P. 50, the Court views the evidence in the light most favorable to the nonmoving party. Wilcox v. Tricam Indus., No. 1-08-0030, 2010 U.S. Dist. Lexis 51104, at *3 (M.D. Tenn. May 21, 2010) (citing Reeves v. Sanders Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). For such a motion, the Court cannot "reweigh the evidence or assess the credibility of witnesses" because the "review is restricted to the evidence that was admitted at trial." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010) (citations omitted). Yet, "the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate 'wherever there is a complete absence of pleading or proof on an issue material to the cause of action or where no disputed issues of fact exist such that reasonable minds would not differ.'" Jackson v. Quantex Corp., 191 F.3d 647, 657 (6th Cir. 1999).

4

As a threshold matter, the Defendant is vicariously liable for Fulton's conduct as the store manager whose authority extended to all conditions of claimants' employment at the store. Moreover, despite evidence of Defendant's written policies on sexual harassment and that the store's assistant general managers knew of Fulton's conduct and had a duty to report such conduct, the assistant general managers did not report Fulton's conduct. Given the jury's damages awards to each claimant, the Defendant is vicariously liable for Fulton's conduct with Roberts. Fulton was the store manager who had authority over all conditions of employment at the Franklin store. Pennsylvania State Police v. Suders, 542 U.S. 129, 144 (2004) ("an employer is liable for the acts of its agent when the agent "was aided in accomplishing the tort by existence of the agency relation'") (quoting Burlington Industries Inc.v.Ellerth, 524 U.S.742, 758 (1998) (quoting Restatement Section 219(2)(d)).

A constructive discharge claim based on a sexually hostile work environment must demonstrate that the offending behavior was sufficiently severe or pervasive to alter the work conditions of the victim's employment, and created an abusive working environment where working conditions were so intolerable that a reasonable person would have felt compelled to resign. Suders, 542 U.S. at 144 . As the Supreme Court held in Suders:

> To establish hostile work environment, plaintiffs like Suders must show harassing behavior "sufficiently severe or pervasive to alter the conditions of [their] employment." **Beyond that, we hold, to establish "constructive discharge," the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response.** An employer may defend against such a claim by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus. This affirmative defense will not be available to the employer, however, if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion,

> extreme cut in pay, or transfer to a position in which she would face unbearable working conditions.

Id. at 133-34 (citations omitted) (emphasis added). Under Suders, the controlling standard for constructive discharge claims is the severity of the sexual conduct and whether the employee's decision to leave the defendant's employment was a "fitting response" of a reasonable person.

In pre-Suders and post-Suders decisions, the Sixth Circuit has held that "[t]o determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." Moore v. Kuka Welding Sys., 171 F.3d 1073, 1080 (1999); see also Smith v. Henderson, 376 F.3d 529, 533-34 (6th Cir. 2004) ("The existence of a constructive discharge 'depends upon the facts of each case and **requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.** A constructive discharge requires a determination that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'") (citations omitted and emphasis added).

Thus, the Sixth Circuit's "intent" standard focuses on the employer's reasonable foreseeability of the employee's response to the sexual harassment. See Spence v. Donahoe, No. 11-3203, 2013 WL 628524, at *11 (6th Cir. 2013) ("A constructive discharge claim exists if the plaintiff shows that a reasonable employer would have foreseen that a reasonable employee would feel constructive discharged."). Moreover, under the Sixth Circuit intent test, cited by the Defendant, the employer's "**intent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions.**" Moore, 171 F.3d at 1080 (emphasis added).

The undisputed evidence at trial established Fulton's repeated sexually exploitive conduct with Roberts involvong oral and vaginal sex in multiple places that resulted in Roberts contracting

6

an incurable sexually transmitted disease. Given Fulton's age (38), position (general manager), and conduct and Roberts's status as a 16 year old minor employee with emotional maturity issues and a sexually transmitted disease, a reasonable employer would have foreseen from Fulton's conduct that Roberts would terminate her employment due to Fulton's sexually predatory conduct. From the perspective of a reasonable employee, Roberts's decision to leave the Defendant's employment given the sexually hostile work environment is a "fitting response" under <u>Suders</u>. Thus, the Court concludes that these undisputed facts clearly establish that Roberts's quitting was a foreseeable result of Fulton's sexual conduct and that the jury's finding that Roberts was not constructively discharged by Defendant, is contrary to the clear weight of the evidence.

### B. Motion for a New Trial

For its motion for new trial on damages, Plaintiff contends, in essence, that the jury's identical $10,000 damages award to each claimant is also against the clear weight of the evidence at trial. Plaintiff further contends that the jury's finding that Defendant did not act with malice or reckless disregard to the federally protected rights of all claimants is against the weight of the evidence at trial and contrary to the Court's jury instructions.

In response, Defendant contends, in sum: (1) that Roberts did not find her work environment "intolerable"; (2) that Plaintiff lacks precedent that a court can award a new trial because a jury awarded identical or inadequate compensatory damages in a Title VII action; (3) the standards for granting a motion for a new trial do not allow a new trial for uniform or inadequate emotional distress damages awards; and (4) even if Federal Rule of Civil Procedure 59 contemplated a new trial due to inadequate compensatory damages, Plaintiff has not met Rule 59's strict standard.

Federal. Rule of Civil Procedure 59(a)(1)(A), which governs grounds for new trial, provides

7

as follows:

> (1) The court may, on motion, grant new trial on all or some of the issues – and to any party – as follows:
>
>> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.

The authority to grant a new trial under Rule 59 rests within the discretion of the trial court. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).

Under Fed. R. Civ. P. 59(a), in considering a motion for a new trial, the Court must determine if the jury could reasonably reach the verdict based upon the evidence. Powers v. Bayliner Marine Corp., 83 F.3d 790, 798 (6th Cir. 1996). Yet, the evidence is also reviewed "most strongly in a light in favor of the verdict." Ross v. Meyers, 883 F.2d 486, 488 (6th Cir. 1989) and all credibility issues are for the jury's determination. Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1395 (6th Cir. 1990). The Court can set aside the jury verdict upon showing of a "'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Holmes v. City of Massillon, 78 F.3d 1041, 1046 (6th Cir. 1996) See also

In Strickland v. Owens Corning, 142 F.3d 353 (6th Cir. 1998), the Sixth Circuit outlined the following analysis for ruling on a motion for a new trial:

> [I]n ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable.

8

Id. at 357 (quoting J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991). Yet, "while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably been reached." Id. (quoting Bruner v. Dunaway, 684 F.2d 422 (6th Cir. 1982). The Court shall "deny the motion if the verdict is one which could reasonably have been reached," even if "different inferences and conclusions could have been drawn or because other results are more reasonable." Onuoha v. Continental Airlines, Inc., 97 Fed.Appx. 1, 2 (6th Cir. 2003).

Plaintiff contends the jury's verdict awarding identical $10,000 damage awards to each claimant is against the clear weight of the evidence presented. Plaintiff introduced claimant testimony and documentary evidence depicting interactions and the nature of the relationships that Defendant's general manager Fulton had with each claimant . Plaintiff also presented proof about Defendant's other assistant managers at the Franklin store who were aware of Fulton's sexual misconduct and their duty to report that conduct, but did not do so. At trial, the jury found the Defendant liable for Fulton's sexually predatory conduct involving claimants, teenage employees. Based upon its verdict, the jury further found that such conduct was known to the Defendant.

In considering whether the jury's identical of $10,000 compensatory damage awards for Roberts, Hopmayer, and Watson, is against the weight of the evidence presented at trial, the Court reviews a comparative summary of Fulton's conduct with each claimant.

| Roberts Sexual Harassment (Fulton's conduct) | Hopmayer Sexual Harassment (Fulton's conduct) | Watson Sexual Harassment (Fulton's conduct) |
|---|---|---|
| •Vaginal/Oral sex in Defendant's store<br>•Vaginal/Oral sex in Fulton's car<br>•Vaginal/Oral sex in area hotels<br>•Vaginal/Oral sex in Fulton's home<br>•Roberts's contraction of an incurable sexually transmitted disease | •Hugs<br>•Stomach poking | •Massages<br>•Shoulder touching<br>•Back touching<br>•Thigh touching |

When comparing Fulton's over-the-clothes touching of the shoulders, back, stomach and legs of Hopmayer and Watson, the jury's identical damage awards to Hopmayer and Watson are within the range of reasonableness. The Court concludes that those identical compensatory damages awards should remain undisturbed. Yet, the comparison of that conduct to Fulton's conduct toward Roberts is another issue.

The clear weight of the undisputed evidence revealed Fulton's egregious sexual conduct toward Roberts. Fulton, then 38 years old, involved Roberts, then 16 years old, in vaginal and/or oral sex in Defendant's store, Fulton's home, Fulton's automobile and area hotels and motels that led to Roberts's contraction of HPV, a sexually transmitted disease. This disease will present life-long adverse consequence for Roberts, as HPV will become active when she has sexual relationsRoberts underwent psychological treatment for her thoughts of suicide. Considering Fulton's conduct toward the other claimants, the evidence of his conduct toward Roberts is so grossly disproportional that identical compensatory awards to each claimant evinces bias against Roberts. The Court finds the

10

Case 3:11-cv-00920   Document 188   Filed 04/19/13   Page 10 of 12 PageID #: 3343

jury's identical damages award for Roberts to be contrary to the clear weight of the evidence. Thus, the Court concludes the evidence presented at trial does not support the jury's award of identical $10,000 damage award for Kayla Roberts and warrants a new trial on damages for claimant Kayla Roberts.

As to a new trial on punitive damages, Plaintiff next contends that the jury's failure to award punitive damages to Roberts, Watson, and Hopmayer is against the weight of the evidence and the Court's jury instructions. In a Title VII action, a claimant may recover punitive damages when the evidence shows that an employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981(b)(1). Upon deliberation, the jury evaluated the evidence, and in its discretion, found the Defendant's discriminatory behavior did not warrant punitive damages awards for any claimant. Given Fulton's relatively benign conduct toward Watson and Hopmayer, the Court concluders that the jury could determine that Fulton's conduct toward then was neither wilful nor reckless disregard.

Yet, for Roberts, Fulton's acts were the acts of the Defendant and given Roberts's age (16) Fulton's acts at a minimum exhibited a reckless disregard for Roberts's right in the workplace. Given the Court's conclusion on the jury's unreasonable compensatory damages award for Roberts and Fulton's multiple egregious acts with Roberts over a six months period that left her with a sexually transmitted disease and in a depressive state, the Court also concludes the jury's decision on punitive damages for Kayla Roberts is contrary to the clear weight of the evidence at trial.

Accordingly, for these reasons, the Court concludes that Plaintiff's renewed Rule 50 motion for judgment as a matter of law for claimant Kayla Roberts's constructive discharge claim or in the alternative, a new trial (Docket Entry No. 149), should be granted as to a new trial. Plaintiff's

11

motion for a new trial on damages (Docket Entry No. 154) should also be granted for claimant Kayla Roberts's claims for compensatory and punitive damages.

An appropriate Order is filed herewith.

**ENTERED** this the ___19th___ day of April, 2013.

_____
WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court